IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

      v.                                                  Criminal No. 3:00cr83 (DJN)

LUIS CRISTOBAL,
Defendant.

## MEMORANDUM OPINION
### (Denying Motion for Compassionate Release)

This matter now comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 142), which moves pursuant to 18 U.S.C. § 3582(c)(1)(A) for Defendant's release in light of intervening changes in law, his age, medical conditions, and the outbreak of the Delta variant of the Coronavirus Disease 2019 ("COVID-19"). For the reasons set forth below, the Court DENIES Defendant's Motion. (ECF No. 142.)

### I. BACKGROUND

#### A. Defendant's Underlying Offense

Early in the morning of February 7, 2000, Defendant placed homemade explosives at three locations: one under the pickup truck of his estranged wife's ex-boyfriend, David Haston, one under the vehicle of the Defendant's former brother-in-law, Joseph Michael, and one outside the door of a business owned by David Filippi, Colonial Iron Works in Chesterfield County. (June 4, 2001, Presentence Investigation Report ("PSR") (ECF No. 128) ¶¶ 28–31.) Both devices placed under the vehicles exploded shortly after the operator started the engine and the third detonated sometime that morning. (PSR ¶¶ 29–30, 32.) The vehicle operators, Michael and Haston, sustained injuries including post first degree burns, concussive syndrome, and post-

traumatic stress disorder with physical symptoms. (PSR ¶¶ 32–34.) After the initial investigation, law enforcement personnel obtained a warrant charging Defendant with various crimes pertaining to the explosive devices. (PSR ¶ 37.)

After several leads pointed to Defendant's location at the Dinwiddie Church of Christ, law enforcement conducted a consent search. (PSR ¶¶ 38–39.) State Police Trooper Ed Melton confronted Defendant hiding within the crawl space of the church. (PSR ¶ 39.) Trooper Melton noticed that Defendant had a pistol raised and ordered Defendant to put down the firearm several times. (PSR ¶ 39.) When Defendant refused, Trooper Melton fired his weapon, wounding Defendant. (PSR ¶ 39.) Officers determined that Defendant was seriously injured and took him to the Medical College of Virginia Hospital. (PSR ¶ 39.)

**B. Procedural History**

On March 8, 2000, a Grand Jury charged Defendant with twenty-three offenses. (ECF No. 8.) Defendant gave notice of an intent to rely on an insanity defense on April 13, 2000. (ECF No. 16.) The Court granted a continuance until a psychiatric examination could be completed. (ECF No. 21.) After another continuance, the Court approved a waiver of trial by jury on March 8, 2001. (ECF Nos. 53, 68.) The Court set trial to begin on March 12, 2001. (ECF No. 68.)

On March 14, 2001, United States District Judge Richard L. Williams found Defendant guilty on twenty-two counts: Attempted Voluntary Manslaughter, in violation of 18 U.S.C. § 1114(3); Assaulting, Resisting, or Impeding Federal Officers or Employees, in violation of 18 U.S.C. § 111; Possession of a Firearm by Felon, in violation of 18 U.S.C. § 922(g)(1); Discharging a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); Possession of a Firearm During and In Relation to a Crime of Violence, in

2

violation of 18 U.S.C. § 924(c); two counts of Possession of a Firearm During and In Relation to a Crime of Violence – Destructive Device, in violation of 18 U.S.C. 924(c); four counts of Possession of a Firearm, in violation of 26 U.S.C. §§ 5861(c) and 5871; four counts of Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871; four counts of Unlawful Making of Destructive Devices, in violation of 26 U.S.C. §§ 5822, 5861(f), and 5871; two counts of Malicious Damage and Destruction of Vehicle or Building, with personal injury, in violation of 18 U.S.C. § 844(i); and one count of Malicious Damage and Destruction of Vehicle or Building, without personal injury, in violation of 18 U.S.C. § 844(i). (ECF No. 79.) On June 14, 2001, Judge Williams sentenced Defendant to two life terms, plus thirty-five years. (ECF No. 88.) Defendant appealed (ECF No. 90), and on June 5, 2002, the Fourth Circuit affirmed his convictions and sentence. *United States v. Cristobal*, 293 F. 3d 134, 137 (4th Cir. 2002).

### C. Defendant's Motion for Compassionate Release

In response to the COVID-19 outbreak within the federal prison system, Defendant moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Mot. for Compassionate Release Pursuant to Section 603(b) of the First Step Act of 2018 ("Def.'s Mot.") (ECF No. 142) at 1.) In support of his motion, Defendant asserts that his advanced age and medical conditions (asthma) render him vulnerable to the COVID-19 virus and its variants. (Def.'s Mot. at 1.) In addition, Defendant argues that the changes to the stacking provisions of 18 U.S.C. § 924(c) would substantially lower Defendant's sentence if determined today. (Def.'s Mot. at 1.) Defendant claims that his medical conditions and change in sentencing law constitute "extraordinary and compelling reasons" for release. (Def.'s Mot. at 1.)

Defendant also maintains that the §3553(a) factors weigh in favor of release. (Def.'s Mot. at 20–21.) Specifically, Defendant argues that his harsh sentence constitutes an unwarranted departure from similarly situated defendants. (Def.'s Mot. at 20–21.) Additionally, Defendant's prison record contains no disciplinary infractions. (Def.'s Mot. at 22.) Further, Defendant contends that he would be of no danger to the public, because there is an ICE detainer on his prison record. (Def.'s Mot. at 13.) Finally, Defendant maintains that if released in the United States, his niece and her husband in Florida will assist him, constituting a viable release plan. (Def.'s Mot. at 14.)

The Government filed its Response to Defendant's Motion on August 29, 2021, (Resp. of the United States in Opp'n to Def.'s Mot. for Compassionate Release ("Govt.'s Resp.") (ECF No. 149)), and Defendant filed his Reply in support for Compassionate Release on September 7, 2021, (Def.'s Reply to Govt.'s Resp. to his Compassionate Release Motion ("Def.'s Reply") (ECF No. 151)), rendering the matter ripe for review.

## II. STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction.

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (recognizing U.S.S.G. § 1B1.13 remains helpful guidance in describing medical conditions that amount to "extraordinary and compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)–(D).

However, these policy statements also provide that to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health, because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." *Id.*, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. *Id.*, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than,

5

or in combination with, [the defendant's medical conditions, age and family circumstances]." *Id.*, application note 1(D).

The Fourth Circuit has found that because § 1B1.13 was adopted before the First Step Act, it does not directly apply to motions brought by defendants. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Therefore, § 1B1.13 does not operate to constrain the discretion of district courts, and instead, courts should "make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A)." *Id.* at 284. The Fourth Circuit noted that § 1B1.13 "remains helpful guidance when motions are filed by defendants," and emphasized that still "only those defendants who can meet the heightened standard of 'extraordinary and compelling reasons' may obtain relief." *Id.* at 282 n.7, 287. Thus, § 1B1.13 remains a helpful starting place when determining what circumstances warrant compassionate release, but the Court is not bound by the specific situations contemplated therein in making this determination.

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* ("*Feiling I*"), 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 451 F. Supp. 3d 562, 567–69 (W.D. Va. Apr. 2, 2020)). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling* ("*Feiling II*"), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020).

6

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent that they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," "(B) to afford adequate deterrence" and "(C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2). Additionally, while constituting further non-binding guidance in the context of defendant-filed motions, in § 1B1.13(2) the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released. *See High*, 997 F.3d at 186 ("[T]here currently exists no 'applicable policy statement' that governs a *defendant's* motion for compassionate release. . . . [T]he only policy statement that possibly could be 'applicable' [is] U.S.S.G. § 1B1.13.") (cleaned up) (quoting *McCoy*, 981 F.3d at 281–82). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not contravene the relevant § 3553(a) factors. Defendant has failed to meet that burden here.

## III. ANALYSIS

### A. Defendant Does Not Demonstrate that Extraordinary and Compelling Reasons Entitle Him to Compassionate Release.

Defendant must show that his circumstances present "extraordinary and compelling reasons" entitling him to compassionate release. Defendant first argues that changes within the "stacking provisions of 18 U.S.C. § 924(c)" present extraordinary and compelling reasons, because his sentences under Counts 10 and 15 would result in sentences of thirty years rather than life terms. (Def.'s Mot. at 1, 15–16.) Additionally, Defendant argues that due to his preexisting health conditions, the heightened risk of contracting COVID-19 in prison increases his chance of developing serious COVID-19 complications. (Def.'s Mot. at 18–19.) Specifically, Defendant contends that his asthma and advanced age of 68 place him at an enhanced risk of severe illness. (Def.'s Mot. at 19–20.) Moreover, although Defendant is vaccinated, Defendant notes that with the spreading of the Delta variant, the CDC guidelines warn that vaccinated people "may not be protected." (Def.'s Mot. at 17.)

In response to Defendant's Motion, the Government argues that Defendant's claims do not establish extraordinary and compelling reasons for his release. (Govt.'s Resp. at 1.) Particularly, the Government argues that an intervening change in law is not an "extraordinary circumstance." (Govt.'s Resp. at 8–11.) In addition, the Government contends that even if the change in law was considered, the stacked § 924(c) do not constitute the "lion's share" of his overall sentence, because Defendant received a sentence of thirty-five years on the remaining counts. (Govt.'s Resp. at 11.)

Furthermore, the Government argues that Defendant's health concerns are not extraordinary and compelling, because Defendant has not demonstrated that he faces a "particularized susceptibility" to COVID-19. (Govt.'s Resp. at 12.) The Government concedes

8

that Defendant's age and asthma render him more likely to suffer severe illness from COVID-19. (Govt.'s Resp. at 12.) Nonetheless, the Government maintains that Defendant does not face a particularized susceptibility, because he has received full vaccination against COVID-19. (Govt.'s Resp. at 12.) Additionally, the Government asserts that Defendant has a greater risk of contracting COVID-19 if released due to a higher positivity rate in Miami-Dade County, where Defendant seeks release. (Govt.'s Resp. at 14.)

As a threshold matter, Defendant has exhausted his administrative remedies under § 3582(c)(1)(A). Defendant submitted a request for administrative leave on September 10, 2020. (Ex. B to Def.'s Mot. (ECF No. 142-2) at 1.) On October 2, 2020, the Bureau of Prisons denied Defendant's request. (Ex. B to Def.'s Mot. at 3.) Accordingly, the Court finds that Defendant has exhausted the administrative remedies outlined under § 3582(c)(1)(A) and that the Court has jurisdiction to consider the merits of Defendant's Motion.

*i. Stacking Provisions of 18 U.S.C. § 924(c).*

In *United States v. McCoy*, the Fourth Circuit held that "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). In particular, the court recognized that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *Id.* at 285. The Fourth Circuit emphasized "that these judgements were the product of individualized assessments of each defendant's sentence" and that the courts relied on "full consideration of the defendants' individual circumstances." *Id.* at 286. Nevertheless, the Fourth Circuit was careful to note that "not *all* defendants convicted under § 924(c) should receive new sentences [but that

9

courts should be empowered] to relieve *some* defendants of those sentences on a case-by-case basis." *Id.* at 287 (cleaned up).

In *McCoy*, the Fourth Circuit reviewed consolidated compassionate release appeals of armed robbery cases in which the defendants had violated § 924(c). *Id.* at 277–78. Two of the defendants had received forty-five-year mandatory minimum sentences under the stacking provision of § 924(c) that constituted the "lion's share" of their fifty-two- and fifty-three-year sentences. *Id.* at 278. The district courts granted the defendants' motions for compassionate release, and the Fourth Circuit affirmed. *Id.* at 274.

The Fourth Circuit focused on several factors that the district courts analyzed. First, the court noted the "sheer and unusual length" of the defendants' sentences and the "gross disparity" between those sentences and current penalties. *Id.* at 285. Second, the court emphasized the defendants' "relative youth — from [nineteen] to [twenty-four] years old — at the time of their offenses" and their "lack of significant prior criminal history." *Id.* at 274, 286. Finally, the court highlighted McCoy's significant rehabilitation efforts, evidenced by "many educational and vocational achievements and his payments of nearly $10,000 towards a $38,209 restitution order shared among seven co-defendants." *Id.* at 278. Considering all of the factors under an individualized assessment, the Fourth Circuit concluded that the district courts appropriately found "extraordinary and compelling" reasons for release. *Id.* at 274–75.

In Defendant's case, the Court finds that the changes to the stacking provisions of 18 U.S.C. § 924(c) do not establish extraordinary and compelling circumstances for relief. Defendant claims that his two mandatory life sentences under § 924(c) prove severe and grossly disparate to current sentences, considering his offenses did not result in death or serious permanent injury. (Def.'s Mot. at 16.) He argues that each would result in a thirty-year sentence

10

today. (Def.'s Mot. at 16.) However, focusing on the fact that the conduct did not result in any deaths ignores the severity of the crimes committed. The Court found Defendant guilty for egregious conduct on twenty-two different counts, only four of which fall within § 924(c). (PSR ¶ 25.) The counts include the making of destructive devices, malicious destruction of vehicles, use of a firearm during and in relation to a crime of violence and attempted voluntary manslaughter of a Virginia State Trooper. (PSR ¶ 25.) On these charges, the Court sentenced Defendant to thirty-five years beyond the two life sentences merited by the § 924(c) charges. Unlike in *McCoy*, Defendant would still face significant time apart from the stacked § 924(c) life sentences. *McCoy*, 981 F.3d at 278.

Further, Defendant's case is easily distinguishable from *McCoy* on the other factors. Defendant was forty-six years old, unlike the much younger defendants in *McCoy*. Moreover, Defendant had a significant criminal history before the instant offense, including rape, assault and battery, and multiple convictions for sexual battery. (PSR ¶¶ 73–76.) Finally, unlike the defendants in *McCoy*, Defendant has not demonstrated significant rehabilitative efforts. A two-month crochet course constitutes his only educational achievement on record since 2005, and Defendant has not attempted to pay his restitution beyond the minimum required. (*See* Progress Report (ECF 142-1) at 1, 3 (showing quarterly payments of $25 towards a restitution order of $89,726.29).) Therefore, considering Defendant's individualized circumstances, the changes to the § 924(c) stacking provision do not amount to an extraordinary and compelling reason for release in this case.

    *ii. Defendant's Susceptibility to COVID-19.*

Neither has Defendant established an extraordinary and compelling reason for his release due to his medical conditions and the risk of contracting COVID-19. Particularly, "[i]n the

11

context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling I*, 453 F. Supp. 3d at 841 (citations omitted). To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor. *See, e.g.*, *United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). Indeed, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 453 F. Supp. 3d at 841 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification.") (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020)).

Against these standards, Defendant has not established a particularized susceptibility to COVID-19. In spite of the emergence of the Delta variant, many courts continue to find that vaccinated individuals fail to demonstrate a particularized susceptibility. *See, e.g.*, *United States v. Ellis*, 2021 WL 3234606, at *5 n.3, 6 (E.D. Va. July 29, 2021) (recognizing the Delta variant's increased transmission, yet holding it insubstantial to justify compassionate release); *United*

12

*States v. Hawthorne*, 2021 WL 1912382, at *2 (E.D. Va. May 12, 2021) (finding the defendant's variants argument against the vaccine to be speculative given that the vaccine has been shown to be effective). Defendant has received full vaccination (Def.'s Mot. at 20), significantly reducing his risk of contracting COVID-19. *See The Possibility of COVID-19 after Vaccination: Breakthrough Infections*, Ctrs. for Disease Control & Prevention (last updated Sep. 7, 2021) ("COVID-19 vaccines are effective at preventing infection, serious illness, and death.").[1] Therefore, although Defendant has demonstrated multiple medical conditions that have been identified by the CDC as COVID-19 risk factors (his age group and asthma), Defendant has not established a particularized susceptibility to COVID-19.

Nor has Defendant demonstrated a particularized facility risk. As of November 3, 2021, USP Coleman II has zero positive cases among prisoners and just one case among staff. *COVID-19 Cases*, Fed. Bureau of Prisons.[2] This case count lies far below the 1,968 cases (or 3.18% positivity) found in Miami-Dade County, Florida, where Defendant seeks release. *COVID Data Tracker, COVID19 Integrated County View*, Ctrs. for Disease Control & Prevention (last visited November 4, 2021).[3] Additionally, USP Coleman II presently modifies its operations to combat the risks of COVID-19, including suspending visitors, testing of inmates and restricting prisoner movement. *USP Coleman II*, Fed. Bureau of Prisons (last visited Nov. 4, 2021).[4] As the facility has managed to contain and minimize the spread of COVID-19, the Court

---

[1] Available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

[2] Available at https://www.bop.gov/coronavirus/.

[3] Available at https://covid.cdc.gov/covid-data-tracker/#county-view|Florida|12086|Risk|community_transmission_level.

[4] Available at https://www.bop.gov/locations/institutions/clp/.

cannot conclude that Defendant has established a particularized facility risk of contracting the disease. *See High*, 997 F.3d at 185 ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison.").

### B. The Court Finds that the § 3553(a) Factors Do Not Support Defendant's Release.

Even if Defendant did demonstrate an extraordinary and compelling reason for release, the Court must also consider the § 3553(a) factors. In support of his motion, Defendant argues that his offenses were crimes of passion that left no permanent injuries and that an unwarranted disparity exists in his sentencing. (Def.'s Mot. at 20–22.) Defendant contends that the Court was unable to account for his acceptance of responsibility and mental state, because of the mandatory life sentences. (Def.'s Mot. at 23–24.) Additionally, Defendant points to his lack of disciplinary record and educational courses during his incarceration demonstrating significant rehabilitation. (Def.'s Mot. at 22; Def.'s Reply at 5–6.) Finally, Defendant argues that he would not be a risk to any person in the United States, because ICE would deport him to Cuba. (Def.'s Mot. at 22.)

In its response, the Government argues that the § 3553(a) factors counsel against granting a reduced sentence. The Government claims that the severity of the offense and Defendant's extensive criminal record weigh against release as it reflects a continued public safety risk. (Govt.'s Resp. at 14–18.) Further, while the Government concedes Defendant's clean disciplinary record, the Government argues that this proves, at best, a neutral factor, because rehabilitation alone does not constitute an extraordinary and compelling reason. (Govt.'s Resp. at 19.)

14

The Court agrees with the Government that the § 3553(a) factors do not support a reduced sentence. As previously discussed, Defendant's underlying offense includes the making of destructive devices, malicious destruction of vehicles, use of a firearm during and in relation to a crime of violence and the attempted voluntary manslaughter of a Virginia State Trooper. (PSR ¶¶ 28–44.) Furthermore, for years before the offense, Defendant had several altercations with the victims and even recorded himself threatening them. (PSR ¶¶ 108–12.) Characterizing Defendant's offense as a crime of passion does not capture the gravity of his crimes.

Additionally, Defendant's criminal history weighs heavily against release. Defendant had a criminal history of category VI, (PSR ¶ 164), with multiple offenses over the course of more than fourteen years. (PSR ¶¶ 73–76.) Defendant's continuous disregard for the law demonstrates a significant threat to public safety. Furthermore, Defendant's argument about his potential deportation reducing his risk to the public carries no weight, because Defendant holds United States citizenship through naturalization. (PSR ¶ 90.)

Defendant contends, however, that his rehabilitation warrants a sentence reduction. Specifically, he argues that he faced significant mental health issues at the time of the offenses, but has changed and maintained a clean disciplinary record while incarcerated. (Def.'s Mot. at 22–23; Def.'s Reply at 4–7.) Defendant correctly maintains that post-sentencing conduct constitutes a significant factor when assessing suitability for a sentence reduction. *Pepper v. United States*, 562 U.S. 476, 492 (2011); *United States v. McDonald*, 986 F.3d 402, 411 (4th Cir. 2021); *United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021); *McCoy*, 981 F.3d at 286. In *Pepper*, the Court noted the defendant's rehabilitation in the context of evaluating his history and characteristics, the first § 35553(a) factor. 562 U.S. at 492. Pepper had gone from being "a 25-year-old drug addict . . . [to being] drug free for nearly five years." *Id.* In addition, he

completed college and achieved high grades, become a top employee, rebuilt broken relationships, married and supported his wife's daughter. *Id.* The Court recognized that the defendant's rehabilitation also proved relevant to evaluating the likelihood that he would engage in further criminal conduct. *Id.*

In contrast to *Pepper*, Defendant's rehabilitative efforts prove limited. A crochet class in 2009 constitutes Defendant's only educational or vocational programming since 2005. (Progress Report at 1.) Although Defendant has maintained a clean disciplinary record, his history of recidivism cautions the Court against compassionate release. While serving a previous sentence for rape, Defendant obtained his GED and was released on parole three years into his five-year term. (PSR ¶¶ 74, 173). Over the next twelve years, Defendant proceeded to commit multiple sexual battery offenses, as well as the underlying bombing spree. (PSR ¶¶ 75–76.) Defendant's clean record and ordinary rehabilitative programming fail to convince the Court that Defendant will not again reoffend upon release.

Moreover, Defendant's mental health arguments do not overcome the severity of the crime or reduce the risk of recidivism. The Court thoroughly documented Defendant's mental health issues at the time of his convictions, and their reassertion here proves of no avail. Although the Court credited Defendant with acceptance of responsibility for his conduct, Defendant proceeded to trial to present an insanity defense. (PSR ¶¶ 62–64) Judge Williams ordered that Defendant receive a psychiatric evaluation. (ECF No. 21.) The evaluation team determined that he "was not suffering from a disease or defect that would render him unable to appreciate the nature and quality of wrongfulness of his behavior at the time of the offenses." (PSR ¶ 139.) Additionally, at the request of Defendant's counsel, an outside psychiatrist determined that Defendant suffered from "depression with psychotic features," but that "it would

16

be premature to draw conclusions about whether the relationship between his mental illness and his criminal behavior meets the Federal standard for an insanity defense." (PSR ¶ 140.) Ultimately, Judge Williams convicted Defendant in spite of his mental health challenges. The Court agrees that Defendant's mental health challenges do not mitigate the severity of the crimes committed or warrant compassionate release now.

Therefore, because of the severity of Defendant's crimes and criminal history, his risk of recidivism remains high and cautions against a reduced sentence, regardless of Defendant's efforts at rehabilitation. Ultimately, even if Defendant did present an "extraordinary and compelling" reason for compassionate release, the Court, in its discretion and after considering the § 3553(a) factors, finds that releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct or reflect the seriousness of Defendant's offense. Accordingly, the Court DENIES Defendant's Motion for Compassionate Release.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for Compassionate Release (ECF No. 142.) An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 22, 2021